Riordon *vs.* Holiday and others.

No. 13.—JEREMIAH RIORDON, guardian, &c. plaintiff in error, *vs.* W. HOLIDAY and wife and others, defendants.

[1.] Where a testator, by his will, made the following bequest, " I lend the following negroes, (naming them) with all their increase, to Frances Holiday, Elizabeth Russell and Jarva Lane, children of my first wife; this loan to continue during their natural lives, and at their death, the property to be equally divided among the children of Frances Holiday and Jarva Lane; and in the event of Elizabeth Russel having child or children, they also to have one third part; but if the above named Elizabeth Russell die childless, the whole of the property then, shall go to the children of Frances Holiday and Jarva Lane. It is my desire that John, a negro boy, one of the negroes mentioned in this article, should go into the possession of Jarva Lane, and be considered so much of her part. It is my desire, also, that no part of the above mentioned property, shall come into the hands or possession of James Russell, the husband of Elizabeth Russell, but *it shall be held* by Frances Holiday and Jarva Lane, and go to their children, if James Russell should survive his wife, Elizabeth Russell:" *Held*, on a bill filed by one of the children of Jarva Lane, for a distribution of said property, in the lifetime of Frances Holiday, that it was the intention of the testator, that his three daughters should hold the *possession* of the life estate in the property, during their joint lives, or during the life of the survivor, and that the grand children of the testator were not entitled to a distribution of the property, until the death of the testator's last surviving daughter.

In Equity, in Dooly Superior Court.    Decided by Judge WARREN, November Term, 1849.

The questions in this cause arose upon the construction of the following item in the will of John Smith, deceased :

" I lend the following property, (negroes) to Frances Holiday, Elizabeth Russell and Jarva Lane, children of my first wife; this loan to continue during their natural lives, and at their death, the property to be equally divided among the children of Frances Holiday and Jarva Lane; and in the event of Elizabeth Russell having child or children, they also to have one third part; but if the above named Elizabeth Russell die childless, the whole of the property, then, shall go to the children of Frances Holiday and Jarva Lane. It is my desire, that John, a negro boy, one of the negroes mentioned in this article, should go into the possession of Jarva Lane, and be considered so much of her part. It is my desire, also, that no part of the above mentioned property

shall come into the hands or possession of James Russell, the husband of Elizabeth Russell, but it shall be held by Frances Holiday and Jarva Lane, and go to their children, if James Russell should survive his wife, Elizabeth Russell."

Elizabeth Russell died childless. Jarva Lane had five children by Lane, and after Lane's death, intermarried with one Smith, and after his death, intermarried with Jeremiah Riordon, by whom she had one child. Subsequently she died. Frances Holliday is still alive.

This bill was filed by Jeremiah Riordon, as the guardian of his child, against Frances Holiday, her husband and children, and the children of Jarva Lane, by her first husband, alleging the foregoing facts; and farther, that defendants had the whole of this property in possession, and refused to permit his ward to participate therein. The prayer of the bill was for a division of the property, and an account of the hire and profits.

To this bill was filed a general demurrer, for want of equity.

The Court below sustained the demurrer, and dismissed the bill, " On the ground that the time appointed for the distribution or division of the property had not yet arrived—the life estate of Frances Holiday being not yet determined by her death."

This decision complainant brings up to this Court for review.

Lyon, for plaintiff in error, cited—

2 *Jarman*, 156. 2 *Bl. Com.* 180, 39. 4 *Kent*, 357 3 *Bro. Ch. Rep.* 25. 3 *Ves.* 208, 630. 1 *Atkyns*, 541.

S. T. Bailey, for defendants, cited—

3 *Ves.* 628, 632. 4 *Bro. Ch.* 15. 9 *Ves.* 197, 456. *Powell on Dev.* 705. 3 *Bro. C. C.* 215, 367. 1 *M. & S.* 165. 2 *P. Wms.* 280. 3 *Bro. Parl. Cas.* 104. 3 *Atkyns*, 524. 1 *Ves.* 405. 2 *McC. Ch.* 256, 440. 1 *Hill's Ch.* 322. 4 *Paige*, 47. 4 *Russ.* 70. 1 *Ball & B.* 483. 15 *Ves.* 125. 5 *Madd.* 335. 6 *Ves.* 300. 10 *Ib.* 566. 3 *Madd.* 416. 2 *Fearne*, 386, 401. 2 *Jarm.* 111. 2 *Vernon*, 705. 1 *Beav.* 607. 1 *Hill's Ch.* 153. 2 *Fearne*, 55, 150. 1 *Jarman*, 762. 12 *Ves.* 75. 3 *Ib.* 10. 3 *Merivale*, 382. 4 *Bro. C. C.* 15.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The main question involved in this case is, the proper construction to be given to the second clause of the testator's will.

For the plaintiff in error, it is contended, that it was the intention of the testator, that the property should be held by his three daughters for life, severally, by respective shares, and as each of them should die, the part of the one so dying, should be divided between her children, except Elizabeth Russel's share, which, in the event she died childless, was to be divided between the children of the other two; but in no event was the survivor of his three daughters to have the possession of all the property.

For the defendant in error, it is insisted, that the testator never intended, by any fair construction of his will, that the property should be divided between his grand children, until after the death of his last surviving daughter.

Elizabeth Russell died childless, and Jarva Lane is also dead, leaving six children. Frances Holiday is yet living, and has children.

This bill is filed by one of the children of Jarva Lane, by her guardian, to recover the one-sixth part of one-half of the property bequeathed by the testator, under the second clause of his will. The second clause of the testator's will is in the following words:

"I lend the following negroes, Esther, Eliza, Fanny, Milly, Sarah, Jinsey, Frank, John, Hannah and little Esther, with all their increase, to Frances Holiday, Elizabeth Russell and Jarva Lane, children of my first wife—this *loan* to continue *during their natural lives*, and *at their death*, the property to be equally divided among the children of Frances Holiday and Jarva Lane; and in the event of Elizabeth Russell having child or children, they also to have one-third part, but if the above named Elizabeth Russell die childless, the whole of the property then, shall go to the children of Frances Holiday and Jarva Lane. It is my desire, that John, a negro boy, (one of the negroes mentioned in this article,) should go into the *possession* of Jarva Lane, and be considered so much of her part. It is my desire, also, that no part of the above mentioned property shall come into the hands

or possession of James Russell, the husband of Elizabeth Russell, but *it shall be held* by Frances Holiday and Jarva Lane, and to go to their children, if James Russell should survive his wife, Elizabeth Russell."

Taking the whole of this clause of the will together, and we think it was manifestly the intention of the testator, that this property should remain in the *possession* of his daughters, or the survivor of them, until their death, and then be equally divided between his grand children.

The testator evidently contemplated that his daughter, Elizabeth Russell, might die without children—an event which has happened—and one leading object with the testator was, to keep the property out of James Russell's hands or possession; hence, he directed *it to be held* by Frances Holiday and Jarva Lane, until *their death*, and *then* to be equally divided between their children.   But it is contended, that the testator directed that, in the event Mrs. Russell had children, they should have one-third part of the property; and that expression denotes that it was the intention of the testator, that his grand children should take, *per stirpes*, and not *per capita*.   But how does that expression, in any manner, interfere with the *time* fixed, by the testator, at which the property was to be divided?

The *time* at which the property was to be divided among the testator's grand children, is one question, but in what *proportions* it shall be divided, is another and a very different question.   The same remark may be made in regard to the negro boy, John. The boy, John, was to go into the *possession* of Jarva Lane, as part of her *life estate* in the property; that is to say, the testator expressed his desire that Jarva Lane should have the *possession* of John.   The life estate in this property was to remain in the *possession* of his three daughters, or the survivor of them, until *their deaths*, and then to be equally divided among their children. Suppose Elizabeth Russell had been the survivor of the testator's three children, could the children of the other deceased daughters have compelled a distribution before her death?   Certainly not; and for the reason that she might have children before her death, who would be entitled to a part of the property.   Frances Holiday being the survivor of the testator's three daughters, she is entitled to the possession of a life estate in the property, and at

her death, the grand children of the testator will take, under the will of the testator, and not through their respective mothers.

Whether the grand children will take under the will, *per capita*, or *per stirpes*, we leave an open question, to be decided when the death of Frances Holiday shall authorize a division of the property to be made, according to our construction of the testator's intention.

Let the judgment of the Court below be affirmed.