ALEXANDER DUNN et al., plaintiffs in error, vs. HARRIET BRYAN, defendant in error.

John Waters died testate, leaving three daughters. By the *eleventh* item of his will he directed that the residue of his estate, after the payment of debts, and for certain improvements, be invested in bank stock, and that his executors hold it in trust for the equal use and benefit of his daughters aforesaid, during their respective lives, and after their death, then in trust for the use of the children of his said daughters, and if either of his said daughters died without issue, her share to go to her sisters, and if either died leaving issue, her share to go to her issue. One of the daughters died without issue. Another died leaving one child, the wife of plaintiff in error ; the third is still in life.

*Held :* that the three daughters were tenants-in-common under this item of the will, and that the two survivors took the share of the sister who died without issue, equally, in fee simple, and upon the death of the second sister, her daughter took her share in like manner, and became a tenant-in-common with the surviving daughter of the testator.

Equity. Tenants-in-common. Decided by Judge FLEMMING. Chatham county. Chambers. March, 1868.

This case is as follows :

Harriet Bryan averred that in 1835, John Waters, her father, departed this life, leaving a will, with a codicil attached, and that George W. Anderson, William W. Gordon and William H. Cuyler were appointed therein as his executors. By the fourth item of said will, the said testator devised the two (2) lots of land, numbers five and six, Eyles Tything, Heathcote Ward, and also lot number ten, First Tything, Reynolds' Ward, all in the city of Savannah, said county of Chatham, and all improvements on said lots, in trust, for the use of his daughter, Eliza Waters, during her life, and after her death, to and for the use of her children, if any she should have, and in default of children of the said Eliza, living at her death, then in trust to and for the use of his dauthers Jane A. Bruen and complainant, for their respective lives, and after their death, then in trust to and for the use of the children of the said Jane A. Bruen and of complainant, share and share alike, forever.

By the fifth item of said will, testator devised as follows :

" It is my will that my executors have and hold my lot number ten, (10) Eyles Tything, Heathcote Ward, forever, in trust to and for the use of my daughters Jane A. Bruen and Harriet Bryan, for and during their lives, and after their respective deaths, then in trust to and for the use of the child or children of my said daughters, Jane A. Bruen and Harriet Bryan, their heirs and assigns, forever, share and share alike."

The tenth item of said will is as follows : " It is my will that my executors hold and have my railroad stock in trust, to and for the use of my daughter Eliza Waters, for and during her life, and after her death, then in trust to and for the use of her children, if any she have, and if none, then in trust to and for the use of my daughters, Jane A. Bruen and Harriet Bryan, for and during their lives, and after their deaths, then in trust to and for the use of their issue, share and share alike."

The eleventh item of said will is as follows: " It is my will that my executors invest all the rest and residue of the proceeds of my estate, and all moneys of my estate, which shall remain after the payment of my debts and the costs and charges of the improvements before directed to be made on my lots numbers six and ten, Eyles Tything, Heathcote Ward, in bank stock, and that they have and hold the said stock in trust, for the equal use and benefit of my daughters aforesaid, during their respective lives, and after their death, then in trust for the use of the children of my said daughters, and if either of my daughters die without issue, her share to go to her sisters, and if either die leaving issue, her share to go to her issue."

Soon after the death of said testator, to-wit : on the fourth day of January, in the year eighteen hundred and thirty —, said Cuyler and Anderson were duly qualified as executors of said will, the said Gordon declining to accept the said trust, but the whole and sole execution of said will has been conducted and performed by the said Anderson, from said date of qualification and receiving letters testamentary, to the present time.   Anderson, as such executor, very soon after his qualification, had erected on said lot number ten, Eyles

Tything, Heathcote Ward, a two story brick building, in accordance with the directions of testator, contained in the fifth item of his said will, and also a three story brick building on lot number seven, Eyles Tything, Heathcote Ward, (which said lot number seven is the lot which, by mistake, said testator designated, in the fourth item of said will, as lot number five,) in accordance with the directions of said testator, as given in the fourth item of said will.

Testator, at the time of his death, owned a large number of shares of the capital stock of the Central Railroad and Banking Company of Georgia, the number being unknown to complainant, and in pursuance of the instructions given by said testator, in the ninth and eleventh items of said will, the said executor, Anderson, disposed of the property in said last mentioned items named, and invested a portion of the proceeds of such sale in bank or railroad stocks, for and upon the uses named in the said eleventh item of said will, but in what stocks and in what amounts such investment was made, she is not informed.

Said Eliza Waters, one of the legatees under said will, never married, and died in the month of ———— in the year eighteen hundred and sixty-five, without ever having borne a child, and the said Jane A. Bruen, another legatee under said will, died in the month of July, in the year eighteen hundred and sixty-seven, leaving but one child surviving her, and that said child is a daughter, and is now, and was at the death of the said Jane A. Bruen, (who, after the death of said testator, and before her death for many years, had married one ———— Brown,) the wife of Alexander Dunn, who is now a citizen of the State of New Jersey, and resident of the city of Trenton, so that there remains living only complainant, of the three said legatees, who take an estate-for-life under and by virtue of said will, in all the estate devised and bequeathed by said testator, in the said fourth, fifth, ninth, tenth and eleventh items of said will.

Since the death of the said Jane A. Brown, complainant, considering and believing herself to be the only legatee under said will, who is, and since the death of the said Jane A.,

has been, entitled to receive and enjoy the rents, issues, dividends and incomes from the real estate, and stocks, or other personal property named in the fourth, fifth, ninth, tenth, and eleventh items of said will, or which has or have been purchased by said executor with funds arising from the sale of any of the property named in the said ninth and eleventh items of said will, has called on the said executor, George W. Anderson, and requested him to pay over to her any and all monies which he had in possession, arising from the rents, dividends, and income from said real and personal estate, and he, the said executor, would continue for the future, and during the remainder of her natural life, in compliance with her understanding of the true intent and meaning of the said testator's said will, to pay over said rents, dividends and income to her, as belonging to her in her own right. But the said executor, combining and confederating with the said Alexander Dunn, absolutely refuses to comply with said reasonable request, the said executor pretending, and the said Alexander Dunn claiming, that the said Dunn, by virtue of his marital rights, acquired by his said marriage with the said only surviving daughter of the said Jane A. Brown, deceased, is now, and ever since the death of the said Jane A., has been justly entitled to take, receive, and enjoy, in his (the said Alexander's) own right, all the one-half portion of the said rents and income which the said Jane A., as a co-life-tenant with complainant, was entitled to, and would receive, in her own right, were she, the said Jane A., now living; and the said executor pretends that complainant is entitled to no more of said rents, income and profits, than she would be entitled to receive were she, the said Jane A., still in life; whereas, she charges the contrary thereof to be true, and that she is justly entitled to receive from said executor the whole amount of said rents and income, for and during the remainder of her natural life.

.To this a copy of the will was attached as an exhibit. The parts of it not already shewn are as follows :

*In the name of God, amen.* I John Waters, of the city of Savannah, being of sound and disposing mind and memory,

but weak in body, do make this my last will and testament. *First.* I wish that all my just debts and funeral expenses be paid. *Second.* I give and bequeath my negroes, Maria, Sandy, William, Adam and Nelly to the Female Orphan Asylum of the city of Savannah, on condition that said corporation exact no service from them, and only the sum of five dollars from each per annum. *Third.* All the rest and residue of my property, real and personal, in possession or in action, and all monies, stocks and debts, I give, devise and bequeath to my executors, hereinafter named, forever in trust, to and for the uses hereinafter appointed. *Sixth.* It is my will that my executors have and hold my lot on Broughton street, number four, (No. 4,) Liberty Ward, and the improvements thereon, in trust to and for the use of my daughter, Harriet Bryan, for and during her life, and after her death, then in trust for her children, their heirs and assigns, share and share alike. *Seventh.* It is my will that my executors have and hold my lot number nine, (No. 9,) Second Tything, Anson Ward, adjoining Dr. Reid's, in trust to and for the use of my daughter, Jane A. Bruen, for and during her life, and after her death, then in trust for the issue, if any she have, at her death; and if none, then, after her death, in trust to and for the use of the children of my other two daughters, their heirs and assigns forever, share and share alike. *Eighth.* I give and bequeath to each of my said daughters, two negroes, to be selected by them from my gang, to be held by my executors in trust for them, respectively, during their lives, and after their respective deaths, to their respective children, if any they have, and if none, then to my grand-children, share and share alike. *Ninth.* It is my will that my executors sell and dispose of, at public or private sale, my lot number nineteen, (No. 19,) Columbia Ward, also my plantations and all other of my real estate, not before disposed of by this will, and all the remainder of my slaves, and that unless the negroes be sold with the plantation, that they be sold in families—all this I leave to the discretion of my executors. *Twelfth.* I nominate, constitute and appoint my friends, William H. Cuyler, Geo. W. Anderson, William W. Gordon, or

such of them as shall qualify on this, my will, the executors of my last will and testament.    *Thirteenth.* It is my will that the instalments on my railroad stock, which shall hereafter be called in, be paid by my executors out of the residue of my estate.    *Fourteenth.* It is my will that my lots in town, given above to my daughters, be never sold by any order of Court, consent of parties, or in any other manner, but always be held for the trusts before named, and in the event of death or disability of all my executors, without representation, the Superior Court of Chatham county appoint a trustee to carry into effect this will.

JOHN WATERS.    [L. S.]

It was attested properly.    The codicil, made the day after the will, (15th September, 1835,) only corrected a mistake or two in the description of the lots.

Anderson, by his answer, admittted all of said alleged facts, and discovered as to the stocks, that testator, at his death, had seventy shares of stock in the Central Railraod and Banking Company, upon which, two stock dividends had been declared, to-wit: On the 15th of January, 1855, seven shares, and on the 1st of March, 1860, nine shares, making the aggregate eighty-six shares; that, according to the eleventh item of the will, he had purchased one hundred and twelve shares Planters Bank stock, thirty-two shares State Bank stock, twenty-five shares Marine Bank stock, and one hundred and fifty shares Central Railroad and Banking Company stock, which had been increased by a stock dividend of eighteen shares of said stock, making an aggregate of one hundred and sixty-eight shares.

He admitted his refusal to pay as charged, but, denying all combination, etc., said that Dunn and his wife claimed the other half of said rents, etc., and he would not pay out the same without direction from the Court.

Dunn also answered the bill, not denying the statement of facts, but contending that the claim set up by him and his wife was right under the law.

Upon these pleadings, (there being no fact in dispute,)

the parties consented to try the same before the Judge in Chambers.

After argument had, he decided that complainant took a life-estate in the entire property, mentioned in said 4th, 5th, 10th and 11th items of said will. And this is assigned as error.

HARTRIDGE AND CHISOLM, T. E. LOYD, for plaintiffs in error, contended that the 11th item made a tenancy-in-common and not of survivorship, between the sisters, citing Eq. Cas., ab. 292. Precedents in Chan., 491. 1st P. Williams, 96. Cro. Eliz., 698. 2d Vern., 430. 2d Cowp., 657, and 2d Ves. Sr., 256.

T. M. NORWOOD, for defendant in error, contended that the children took *per capita* under the 4th item, citing 2d Jarman on W., 81, sec. 5. *Randolph vs. Bond*, 12*th Ga. R.*, 367. Lincoln vs. Pelham, 10th Ves., 166; that the whole life estate is not terminated till complainant's death, citing Jarman, 57. Walker vs. Shore, 15th Ves., 121. Baldwin vs. Carver, 1st Cow., 309. *Shannan vs. Jackson*, 30*th Ga. R.*, 228. Cumberbeck vs. Perryne, 3d Vern, 484. In further support of complainant's claim, he cited *Riordon vs. Holliday*, 8*th Ga. R.*, 79. And Pearce vs. Edmead, 3 Younge and Call, 246. Jarman, 120.

BROWN, C. J.

Upon the argument of this case, counsel for plaintiff in error, as we understood them, abandoned the assignments of error, except as to the *eleventh* item of the will of John Waters. And, indeed, we think the case of *Riordon, guardian, vs. Holliday and wife*, 8 *Ga.*, 79, controls the case; except as to said *eleventh* item of the will. We cannot, however, agree with the learned and able Judge, who decided this case in the Court below, that the case just cited, is an authority in point, when we come to construe said *eleventh* item of this will. In that case, the will gave only a life-estate to the three sisters, and in no event could either of them take more

than a life-estate in any portion of the property. The language of this will is very different. It is, and that "they (my executors,) have and hold the said stock, in trust, for the *equal* use and benefit of my daughters aforesaid, during their *respective* lives; and after their death, then in trust for the use of the children of my said daughters, and if *either* of my daughters die without issue, *her share* to go to *her sisters*, and if either die leaving issue, *her share* to go to *her issue*." Now, we are satisfied that the words "for the *equal* use and benefit of my said daughters," taken in connection with the subsequent words, "if either die without issue, *her share* to go to her sisters," made the estate a tenancy-in-common, and upon the death of Eliza Waters, without issue, that *her share* went to her two surviving sisters, as tenants-in-common in fee simple; and that upon the death of Mrs. Brown, leaving her daughter, who is the wife of the plaintiff in error, her only surviving issue, *her share*, which was then one-half of the estate, went to her said daughter, who became a tenant-in-common with her aunt, Mrs. Bryan; whose share, at her death, goes to her issue.

We think this view of the case is sustained by authority. In the case of Warner vs. Hone, Pr. in Chan., 491, Thomas Gladwin being possessed of several lease-hold houses, for several terms for years, made his will, and devised his property to his wife for life, and after her death, he gave and devised the same to Alice Bunion and her three sons, *equally* amongst them. And it was decreed that they took, as tenants-in-common, though there was no mention of any division to be made, or equally to be divided between them. And accordingly, the plaintiff, who was administrator of Alice Bunion, and had brought this bill for an account of the profits, had an account of the profits, for the time past, and that he should be let into a fourth part of the rents and profits for the time to come.

In Lewen vs. Cox, Cro. Eliz., 695, it is held that a devise to his "two sons *equally*, and their heirs," creates a tenancy-in-common. Popham, C. J., says, "If one devise his goods *equally* to two, there is not any joint-tenancy: for *equally*,

shows his intention to give to either of them an equal pro-
portion; so of a devise of a term to two equally, they are
tenants-in-common." Again, he says of land: "But if a
devise were to two and their heirs *equally*, or part and part
alike, there is a tenancy-in-common; for every one of their
heirs shall have it." And this opinion was afterwards af-
firmed on a writ of error in the exchequer.

Deme vs. Gaskin, 2 Cowp., 657, was decided by Lord
Mansfield. In that case, testator devised his property to M.
R., G. R., and T. R., *equally*, and it was held the devisees
were tenants-in-common. His Lordship says: "As to the
next question, whether this is a tenancy-in-common or a joint-
tenancy, there is no room for argument. Equally, as well as
equally to be divided, implies a *division ;* whereas, if they
were to take as joint-tenants, there would be no division."

In Fisher vs. Wigg, 1 P. Wm's., 16, Mr. Justice Gould
says: "The words equally divided, or, equally to be divided,
make a tenancy-in-common in a will, beyond all dispute."

In the case of Lord Bindon vs. the Earl of Suffolk, 1 P.
Wm's., 96, this question was as to the proper construction of
the will of the late Earl, who gave £20,000 (due him from the
crown,) to his five grand-children, share and share alike, equal-
ly to be divided between them, and if any of them died, then his
share to go the survivors, or survivor of them. The ques-
tion was, whether the grand-children took as tenants-in-com-
mon or as joint-tenants, and the Lord Chancellor held that
they took as tenants-in-common, and that, by the subsequent
words, if any of them died, his share shall go to the survi-
vors, it must be intended, if any should die during the life-
time of the testator. This case, which was decided in 1707,
was reversed on an appeal to the Lords; but in the subse-
quent case of Stringer vs. Phillips, decided in 1730, the opin-
ion of Lord Cowper was adhered to. That case is thus re-
ported in Equity Cases, Abr., 292. "One devised £100 to
five, *equally* to be divided between them, and the survivors
and survivor of them, and if A, (one of the five,) died be-
fore marriage, her share to go over to another person; and it
was decreed, that they took this £100 as tenants-in-common;

and that the words '*and that the survivors and survivor of them*' to make them joint-tenants, would be a contradiction, to the first words, whereby they were made tenants-in-common; and that they should be construed to extend only to such, who were the survivors at the death of the testator; and therefore inserted, to prevent a lapse, and this is the stronger by the *limitation of A's share upon a contingency,* by which it is plain the testator did not intend her to be a joint-tenant with the rest; and as the devise was to all five, they must all take alike, and not A, to be tenant-in-common, and the other five joint-tenants."

It was adjudged, in 3 Lev., 379, that if a man devises lands to his two sons, and their heirs forever, and the longer liver of them, to be *equally* divided between them, after his wife's death, this shall be a tenancy-in-common in the sons. See 1 Vernon, 65.    2 Vernon, 430.    2 Ves., 255.    Co. Lit., 1906. 2 Rol. Abr., 39.    3 Atk., 524.

But it is insisted that there cannot be a tenancy-in-common under this item of the will, as the three daughters of the testator had a life-estate in the property, and it could not be divided till the *death of the survivor;* and it is questioned by the learned Judge in the Court below, whether any effect whatever should be given to the latter part of this item of the will, which says, "if either of my daughters die without issue, her share to go to her sisters, and if either die leaving issue, her share to go to her issue." Were it necessary to reject any part of the language of the will, we think the words of *survivorship* should be rejected rather than the words which create the tenancy-in-common; as joint-tenancies are not favored by law; and are abolished by our statute.    Words even of *survivorship in a will* shall not defeat the effect of words importing a tenancy-in-common; but shall be referred to some time as the death of the tenant for life, or even the death of the testator; although this would be a construction not to be adopted, if there could be any other.    See note on page 251, Ves. Sr. Ch. Reps., 1 Am. ed.    Russel vs. Long, 4 Ves., 551.    Perry vs. Wood, 3 Ves., 204.

We are of opinion, however, that effect may be given to

every part of this item.   Let it be borne in mind that the language of the testator is, "in trust .for the *equal* use and benefit of my daughters aforesaid, during their *respective* lives, and after their death, then in trust for the use of the children of my said daughters, and if either of my said daughters die without issue, *her share* to go to her sisters, and if either die leaving issue, her share to go to her issue."   Now, what is the plain intent of the testator?   That his three daughters shall take this property as tenants-in-common, for their *respective lives*—that is, each to hold her share of the property for her life, and at her death, her share to go to her issue; and if either die without issue, her share to go to the two survivors, who take it in fee simple, as tenants-in-common; and as each dies who has issue, her share goes to her issue. If it had been intended that the three daughters take as joint tenants-for-life, and that the survivor take the whole during her life, why dispose of the share of one dying without issue?   Under that construction, the moment she died without issue, her share was at an end, and that part of the will which gives her share to her surviving sisters, after her death, is without meaning.   But give the clause the other construction, and every word has its proper place, and its proper signification.

We are satisfied, for another reason, that we do no violence to the intention of this testator by this construction.   Upon an examination of the will, we find that the language of the *eleventh* item, which disposes of the *residuum* of the estate, differs from the language of the *other items* in question. Doubtless the testator had an object in changing the phraseology, when he came to dispose of the *residuum* of the estate, and in using language, different from that used in previous items, by which he gave specific legacies, which were to go to the issue of his three daughters, "share and share alike," "after their deaths."

Judgment reversed.